### In re DALTON'S ESTATE. MILLER v. DALTON.

No. 6905.   Decided April 6, 1946.   (167 P. 2d 690.)

504

See 40 C. J. S., Homestead, sec. 259; 26 Am. Jur., 128.

*Barclay & Barclay*, of Salt Lake City, for appellant.

*Ray S. McCarty* and *H. G. Metos*, both of Salt Lake City, for respondent.

PRATT, Justice.

The executrix of the estate of Minnie Dittmer Llewelyn Dalton has appealed from an adverse decree of the Third District Court setting aside as a homestead the real property and exempt personal property of the estate to respondent, as the surviving husband of deceased.

Minnie Dittmer Llewelyn Dalton died February 8, 1944, leaving, as her surviving husband, Orin Dalton, respondent

herein, and one married daughter, Violet McKissick Miller, executrix and appellant herein. To her daughter she bequeathed a life estate in her real property, consisting of a home in Salt Lake City, Utah, valued at $1500, and all of her personal property, valued at $1150, except $1, which was bequeather to a former husband—not respondent.

Respondent instituted this proceeding, requesting the court to set apart to him as a homestead the devised real property and furniture. Appellant in answer alleged that on or about May 8, 1944, the parties herein entered into the following written agreement, whereby each did release, satisfy and discharge the other from any and all claims, demands, accounts and proceedings of whatsoever nature and kind which either of them then had or claimed to have against the other, and thereupon settled and satisfied for all times all differences and accounts between the parties:

"Agreement

"This Agreement made this 8th day of May, 1944, by and and between Orin Dalton of Salt Lake City, Utah, first party, and Violet Miller, individually and as executrix of the Will of Minnie Dittmer Llewelyn Dalton, deceased, of Salt Lake City, Utah, second party, Witnesseth:

"Whereas, some differences have arisen between said parties with reference to the property of the estate of the said Minnie Dittmer Llewelyn Dalton and the claims of said parties with respect thereto and the said parties have agreed upon a settlement of the said differences.

"Now, Therefore, in consideration of the mutual acts and agreements herein set forth it is agreed as follows:

"1. First party will pay to second party or to her attorneys, Romney & Nelson of Salt Lake City, Utah, on or before thirty (30) days from date, the sum of Two Hundred Seventy and No/100 Dollars ($270.00).

"2. Upon payment of the said sum of money, second party will transfer to first party all of the right, title and interest of the estate of Minnie Dittmer Llewelyn Dalton in and to one (1) 1937 Chevrolet Coach Automobile, Utah license No. D6357, 1944.

"3. By this agreement the said parties do each respectively release, satisfy and discharge the other party from any and all claims, demands, accounts and proceedings of whatsoever nature and kind which the said parties or either of them have or claim to have against the other party with respect to funeral expenses, expenses of last illness and burial of the said Minnie Dittmer Llewelyn Dalton advanced heretofore

by the said first party, as well as any claims which the second party may have against the said automobile, and any and all other matters of whatsoever nature and kind and description; it being the intent and purpose of this agreement hereby to settle and satisfy for all time all differences and accounts whatsoever between said parties. First party does further agree and stipulate that the transfer of the property herein set forth to him constitutes full satisfaction of any claims he may have against the estate of Minnie Dittmer Llewelyn Dalton as an heir, devisee or legatee of the said estate or by reason of any Will of the said deceased.

"Signed in the presence of:
  "J. S. Nelson
  "J. S. Nelson

                              "Orin Dalton,
                                        "First Party
                              "Mrs. Violet McKissick Miller,
                              Individually and as executrix
                              of the estate of Minnie Dittmer
                              Llewelyn Dalton,
                                        "Second Party."

At the conclusion of the trial, the court having decided in favor of respondent, appellant moved for a new trial and offered to show that respondent was not the husband of deceased. The proof offered was an interlocutory decree of divorce on December 18, 1940, between respondent and one Mildred Jolley Dalton; a marriage between respondent and one Valhalla Dalton on January 14, 1941; proof that his marriage to Valhalla Dalton was not invalidated by court action in an annulment proceeding until April 9, 1943; and that respondent married decedent herein on April 2, 1943.

This evidence, however, does not support the conclusion that respondent was not the husband of decedent. Section 40-1-2(7) Utah Code Annotated provides:

"The following marriages are prohibited and declared void: * * * (7) Between a divorced person and any person other than the one from whom the divorce was secured until the divorce decree becomes absolute, and, if an appeal is taken, until after the affirmance of the decree."

At the time Orin Dalton married Valhalla Dalton, his divorce of December 18, 1940, had not yet become a final one, and so that marriage was void from its inception.

In *Sanders* v. *Industrial Comm. et al.*, 64 Utah 372, 230 P. 1026, Ruby Sanders was divorced from one Sam Saris April 25, 1923, in Utah and married O. R. Sanders at Evanston, Wyoming June 16, 1923. When O. R. Sanders was killed in an accident arising out of his employment, Ruby Sanders was denied compensation as the surviving widow. This court, after pointing out that a decree of divorce does not become absolute for six months after its entry, and that any marriage contracted by a party to a divorce proceeding within the time allotted for an appeal from such final decree shall be null and void, stated that the marriage was void ab initio, and no decree of court was needed to determine that the marriage ceremony was a nullity.

This is the same situation as exists in the present case. On January 14, 1941, Orin Dalton could not marry Valhalla Dalton because he was on that date a married man. The ceremony on January 14, 1941, was a nullity, and Valhalla Dalton was not and did not at any time become Orin Dalton's wife. The relationship between these two parties was no legal impediment to the marriage between Orin Dalton and deceased on April 2, 1943. So far as the question of marriage is concerned, Dalton was entitled to homestead rights in the estate of deceased. See *In re Peterson's Estate, Peterson* v. *Parry*, 97 Utah 324, 93 P. 2d 445. The real question in the case is: Did he waive that right by the agreement quoted? It is not pleaded as a waiver.

The homestead right of a surviving spouse may be waived. Such a waiver, however, must be established by clear and conclusive evidence, and it must be shown that the party waiving actually intended to waive his homestead rights as such. In *Plistil* v. *Kaspar*, 168 Iowa 333, 150 N. W. 584, 585, it was contended that the surviving wife had waived her homestead by an antenuptial

contract in which it was mutually agreed that each should keep his or her own property, that neither should inherit anything from the other, that the property of each should descend to his or her own heirs, that the survivor was not to have any right in the property of the deceased, and that the marriage should not affect the property rights of their own individual property. The court in this case said:

"It (the antenuptial contract) does not in terms make any mention of homestead or homestead rights, nor do we think it should be held that the relinquishment of such right was intended or was in the contemplation of the parties in making the contract. The homestead right is a favorite of the law, and its surrender or waiver will not be presumed, nor will such intent be inferred from the use of words of a general and indefinite signification."

In a similar situation in *Mill Owner's Mut. Fire Ins. Co.* v. *Petley,* 210 Iowa 1085, 229 N. W. 736, 741, the court stated:

"* * * Unless the language is plain and unmistakable, we should not conclude that the parties, through mere inference or uncertain implications, meant that a homestead right should be waived or relinquished."

See *Front & Huntingdon Building & Loan Ass'n* v. *Berzinski et al.,* 130 Pa. Super. 297, 196 A. 572.

There is, in appellant's Exhibit 1 (the agreement of May 8, 1944), no mention made of Dalton's homestead rights. There is nothing in the record which indicates that Orin Dalton intended expressly to waive his homestead rights, and such specific intent cannot be implied ■ from the general language of the agreement. The only part of the agreement which deals with respondent's relationship to the estate or the will refers to him as an "heir, devisee, or legatee"; and apparently settles some controversy between the parties over an automobile and funeral expenses and expenses of last illness of decedent. There is not a word therein that gives the least intimation that respondent's relationship as a surviving husband to the real estate and furniture was under consideration. The

trial court did not err in its ruling that respondent, in entering into the agreement of May 8, 1944, did not waive his homestead or exempt personal property rights.

Appellant assigns as error the lower court's determination that the debts and expenses of the estate have been paid and that there are sufficient assets on hand to pay all expenses of administration and attorney's fees. Apparently appellant is objecting upon the theory that ∎ the homestead should not be declared until it is clear that its use will not be necessary for the preferred expenses. There is in the record evidence that those expenses and debts have been paid; appellant in her final account and petition for distribution so states the facts to be; the agreement which is the subject of this controversy indicates that part of them have been paid; and there are receipts in the record to that effect. Undoubtedly there is evidence to support a finding of payment. There may be some controversy as to who paid them, but so far as the estate is concerned they are paid. There is also evidence in the record to support the finding of the lower court that sufficient assets remain in the estate to pay expenses of administration, including executrix fees and attorney's fees. Under the circumstances this court is not in a position to say that the lower court committed any error in so determining. Thus there is a proper foundation laid for the lower court to set aside the homestead and exempt property to respondent.

In the opinion of this court, the decree of the lower court should be affirmed. It is so ordered. Costs to respondent.

LARSON, C. J., and McDONOUGH, WADE and WOLFE, JJ., concur.